STATE v. WILLIAM R. MARTIN.

Argued February 20, 1908—Decided June 8, 1908.

1. Where money is actually loaned by one who also assumes to act as a broker in procuring the loan, and takes a security for the loan in the name of another as a device to conceal the real transaction, the loan is usurious in case the total amount agreed to be paid exceeds the lawful rate of interest and brokerage, although the usurious charge may be concealed as a charge for guaranteeing the payment of the loan.

2. Upon an indictment for keeping a disorderly house in making loans of money at usurious rates of interest, it is erroneous to charge that the defendant may be convicted if he habitually took illegal brokerage fees; but where the jury find not only a general verdict of guilty but find specially, under the court's instructions, that the defendant was guilty of habitually taking illegal interest and also guilty of taking illegal brokerage, the last finding may be disregarded and judgment given upon the general verdict.

On error to Mercer Sessions.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff in error, *Gilbert Collins*.

For the state, *William J. Crossley* and *William R. Piper*.

The opinion of the court was delivered by

SWAYZE, J.    The plaintiff in error was indicted jointly with C. H. Woodward and F. J. Devendorf for keeping a disorderly house. The particular offence charged was the making of loans of money at usurious rates of interest, and at rates in excess of the amounts provided by law. The first count of the indictment, which alone is now material, follows the form that we sustained in *State* v. *Diamant*, 44 *Vroom* 131. This case is said to be differentiated by the fact that it was here proved that the loans were made at lawful interest, with written contracts in solemn form for the compensation and expenses of the loan agency. Upon the face of the papers

there was a loan made by Clara H. Woodward, secured by a chattel mortgage at the lawful rate of interest, which was duly recorded, and a second chattel mortgage to the Capital Loan Company which seems not to have been acknowledged or recorded, and not to have been perfected by the mortgagee's affidavit required by statute.

This second mortgage was given to secure various expenses and a commission of five per cent. besides a sum amounting to about twenty per cent., charged for guaranteeing the loan. The trial judge instructed the jury that if they found that C. H. Woodward was a myth or a name put in the papers for the purpose of having some person other than the Capital Loan Company appear as the lender, it would be for them to say whether this making part of the papers in the name of C. H. Woodward and part in the name of the Capital Loan Company was a mere device and a scheme for exacting illegal rates of interest. He also charged that if the defendant habitually took illegal brokerage fees, the jury must convict. There was a general verdict of guilty as charged and a special finding that he was guilty of habitually taking illegal interest and guilty of habitually taking illegal brokerage.

Disregarding, for the present, the instructions and verdict as to the illegal brokerage, the jury must, under the court's charge, have found that the form of the papers was a mere device and scheme for exacting illegal rates of interest. It can hardly be questioned that if such was the real scheme the solemnity of the form adopted cannot avail the defendant. The case is, in effect, the converse of one where a lender of money attempts to conceal the usurious character of the transaction by the device of a commission to a third party. If the loan was really made by the Capital Loan Company, the charges it made were clearly usurious and none the less so because in appearance the loan was made by Woodward. The only question open is whether there was evidence that justified the court in submitting this question to the jury. There was no evidence that Woodward was a myth and if the judge had rested the case on that alone, the charge could not be sustained. He did not rest it on that alone, but upon the

question whether part of the papers were taken in her name and part in the name of the Capital Loan Company as a mere device and scheme for exacting illegal rates of interest. We think the circumstances of the case justified this instruction.

Clara H. Woodward is a woman residing in Reedsburg, Wisconsin, a place a thousand miles or more from Trenton, so small that it does not appear in the list of towns having five thousand population by the census of 1900. According to the testimony in behalf of the defendant, Woodward sends money to the office of the loan company in Chicago, and when money is needed at Trenton, it is sent from that office. The loans are guaranteed to her by the Capital Loan Company, which is a business name for one J. S. Mackey, of St. Paul. The general manager is one C. F. Weatherby, of Chicago, who is also general manager of a number of loan agencies. The guarantee was by Martin, the manager at Trenton, and not by Mackey, the principal.

The second mortgages given to the Capital Loan Company were never recorded, and when paid off, the practice was to return only the signature torn from the mortgage. All the papers were kept at Trenton and reports of the loans were made to Mackey and not to Woodward, the ostensible lender. We think these facts justified an inference that the money loaned, although it may originally have been furnished by Mrs. Woodward, was really, at the time of the loans, the money of the Capital Loan Company. If so, the loans were usurious and under our decision in the Diamant case the instruction of the court in this respect was correct.

The instruction that the defendant might be convicted if he habitually took illegal brokerage fees, standing by itself, cannot be sustained. The charge of the indictment was that the defendants made loans at usurious rates of interest and at rates in excess of the amounts provided by the law. The making of loans naturally imports the lending of money as a principal and not the procuring of a loan as a broker. Such is the meaning actually and properly attributed to the words in the main portion of the judge's instructions. It would

not comport with that meaning to allow a defendant to be convicted upon proof that as a broker he charged more than the legal brokerage, and if there was nothing more in the case, we should be unable to sustain the judgment; for the general verdict of guilty might have been the result of this erroneous charge. There is, however, an element in the case which renders the judgment sustainable. Under the judge's instructions, the jury not only found a general verdict of guilty as charged, but found specially that the defendant was guilty of habitually taking illegal interest. This is sufficient in itself to justify the general verdict independently of the charge of illegal brokerage, and the finding of guilt in the latter respect may be disregarded. The case resembles one where the indictment contains bad counts and there is a general verdict. In such a case, if there is a single good count, the verdict is sufficient and an entire judgment may be given. 1 *Chit. Crim. L.* *249, *640; *Stone* v. *State, Spenc.* 404, 408; *State* v. *Weller, Id.* 521, 526.

The judgment is affirmed.